**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**GARRY WARREN**,

                                    Plaintiff,

            - v -                                          Civ. No. 9:12-CV-1318
                                                                (TJM/RFT)
**SGT. BEALEY**, *Sergeant, Greene Correctional Facility*,
**DAMIANO**, *Correction Officer, Greene Correctional*
*Facility*, **LAMPOUTUS**, *Correction Officers,*
*Greene Correctional Facility*, **HAYES**, *Correction*
*Officer, Greene Correctional Facility*, **JOHN DOE**,
*Correction Officer, Mid-State Correctional Facility*,
**JOHN DOE(S)**, *Correction Officers, Greene*
*Correctional Facility,*

                                    Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

**GARRY WARREN**
Plaintiff, *Pro Se*
503 Hegeman Ave, Apt. 1F
Brooklyn, NY 11207

**HON. ERIC T. SCHNEIDERMAN**              **MICHAEL G. McCARTIN, ESQ.**
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capital
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**<u>REPORT-RECOMMENDATION and ORDER</u>**

  *Pro se* Plaintiff Garry Warren brings this action, pursuant to 42 U.S.C. § 1983.  Plaintiff's

surviving claims[1] are that: (1) on September 12, 2011, Defendant Damiano issued a false

---

   [1] On February 5, 2013, The Honorable Thomas J. McAvoy, Senior United States District Judge, severed and
transferred, to the Western District of New York, Plaintiff's claims regarding alleged incidents which occurred at at
(continued...)

misbehavior report against him in retaliation for a grievance he filed against her co-workers; (2) on October 16, 2011, Defendant Hayes used excessive force while pat-frisking Plaintiff; and (3) Defendants Hayes, Lampoutus, Begley,[2] and John Doe(s) used excessive force when they assaulted him on November 6, 2011.  *See generally* Dkt. No. 9, Dec. & Order, dated Feb. 5, 2013; *see also* Dkt. No. 1, Compl.  Defendants now move for Summary Judgment on the grounds that Plaintiff failed to exhaust any of his claims, and has failed to state a retaliation claim against Defendant Damiano or an excessive force claim against Defendant Hayes regarding the October 16 pat-frisk incident.  *See generally* Dkt. No. 24-15, Defs.' Mem. of Law.  Plaintiff has not opposed the Motion. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED.**

## I.  STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

---

[1](...continued)
Attica Correctional Facility, as well as dismissed multiple claims and Defendants from this action.  *See* Dkt. No. 9, Dec. & Order, dated Feb. 5, 2013.

[2] Plaintiff mistakenly refers to Defendant Begley as "Bealey."  *See* Dkt. No. 24-15, Defs.' Mem. of Law, at p. 3 n.1.

properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*,

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id*.; FED. R. CIV. P. 56(c). Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).

In the instant case, we note that on January 17, 2014, Defendants filed and served upon Plaintiff, a Motion for Summary Judgment and the Court's NOTIFICATION OF THE CONSEQUENCES OF FAILING TO RESPOND TO A SUMMARY JUDGMENT MOTION. Dkt. Nos. 24, 24-1, & 26. That same day, a second copy of the Court's Notice to *pro se* litigants was sent to Plaintiff by the Clerk of the Court. Dkt. No. 25, Notice to Pl., dated Jan. 17, 2014. On February 28, 2014, Plaintiff's initial deadline to respond to Defendants' Motion terminated without response. On March 3, 2014, pursuant to a request from Plaintiff, the Court extended the response deadline to March 26, 2014, and once again sent Plaintiff a copy of the Court's Notice to *pro se* litigants outlining the consequences of failing to respond to a motion for summary judgment. Dkt. Nos. 27, Lt.-Mot., dated Feb. 25, 2014, & 28, Text Order, dated Mar. 3, 2014. On April 2, 2014, the Court received an additional request from Plaintiff for an extension of the response deadline. Dkt. No. 29, Lt.-Mot., dated Mar. 27, 2014. Although the Court granted Plaintiff's request and extended the

response deadline until May 14, we noted that "[n]o further extensions w[ould] be granted absent a showing of good cause." Dkt. No. 30, Text Order, dated April 3, 2014. On May 11, 2014, Plaintiff requested an additional extension of the response deadline. Dkt. No. 31, Lt.-Mot., dated May 11, 2014. On May 15, the Court denied Plaintiff's request on the ground that Plaintiff failed to establish good cause in support of his Motion. Dkt. No. 32, Text Order, dated May 15, 2014.

Accordingly, because Plaintiff failed to comply with Local Rule 7.1(a)(3), the Court accepts, as true, the factual assertions contained in Defendants' submissions. *See Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997) (citing *Champion v. Artuz,* 76 F.3d at 486, for the proposition that "where the movant's papers give the opposing party 'easily comprehensible notice' of the possible consequences of not replying to the motion, and the party does not provide a response to the motion, the court may consider as undisputed the facts set forth in the moving party's affidavits, and may enter judgment in favor of the movant.").

## II. DISCUSSION

### A. Facts

Plaintiff was incarcerated at Greene Correctional Facility ("Greene") from February 16 to November 25, 2011, when he was transferred to Mid-State Correctional Facility ("Mid-State").[3] Plaintiff remained at Mid-State until March 29, 2012, when he was transferred to Attica Correctional Facility. *See* Compl. at pp. 12, 39, & 45.

On September 12, 2011, Defendant Damiano issued a misbehavior report against Plaintiff

---

[3] The precise sequence of events which occurred during this period are unclear from the parties' papers. However, according to Plaintiff, on November 17, 2011, at a disciplinary hearing, he was sentenced to serve a year in the Solitary Housing Unit ("SHU") (this sentence was later commuted to six months). Compl. at p. 38. Following the hearing, he was placed in Greene's SHU until he was transferred to the SHU at Mid-State on November 25, 2011. *Id.* at pp. 34 & 54.

for two rule violations, "Lying and Being Out of Place." Dkt. Nos. 24-11 through 24-13, Stefanie Damiano Decl., dated Jan. 13, 2014, at ¶ 2 & Ex. A. At a subsequent Tier II disciplinary hearing, Plaintiff was convicted of being out of place and received two days loss of programming and twenty days loss of recreation, receipt of packages, commissary buys, and the use of the telephone. *Id.* at ¶ 3 & Ex. B.

At his Deposition, and in response to questions asked regarding the alleged October 16 pat-frisk incident involving Defendant Hayes, Plaintiff testified that the amount of force used by Defendant Hayes would not have been painful for any other person; indeed, it was only painful for Plaintiff because he had suffered multiple gun shot wounds to one of the areas of his body that Defendant Hayes touched during the pat-frisk. Dkt. No. Dkt. Nos. 24-2 & 24-3, Michael G. McCartin Decl., dated Jan. 17, 2014, at Ex. A, Gary Warren Dep., dated Oct. 8, 2013 (hereinafter "Warren Dep."), at pp. 15–16.

Although Plaintiff filed at least two grievances while at Greene, neither grievance was related to Plaintiff's surviving claims. Rather, on September 13, 2011, the day after he was allegedly retaliated against by Defendant Damiano, Plaintiff filed, and ultimately appealed to the Central Office Review Committee ("CORC"), a grievance regarding medical care which had nothing to do with Defendant Damiano's alleged act of retaliation on the previous day. Additionally, on October 27, Plaintiff filed, and ultimately appealed to the CORC, a grievance entitled "unprofessional" regarding staff conduct unrelated to his claim against Defendant Hayes regarding the October 16 pat-frisk. Dkt. No. 24-4, Anthony Black Decl., dated Jan. 14, 2014, at ¶¶ 2–3; Dkt. Nos. 24-7 through 24-10, Karen Bellamy Decl., dated Jan. 16, 2014, at ¶¶ 2–6 & Exs. A–C.

On November 26, 2011, after his transfer to Mid-State, Plaintiff wrote a grievance with

-6-

regard to his excessive force claim against Defendants Begley, Hayes, Lampoutus and John Doe(s). Dkt. Nos. 24-5 & 24-7, Christopher Tapia Decl., dated Jan. 14, 2014, at Ex. A, Grievance, dated November 26, 2011. However, that grievance was not filed until December 13, 2011. *Id.* at ¶¶ 1–2 & Ex. A. That grievance was returned to Plaintiff unfiled, with a note explaining that the grievance was untimely and that Plaintiff could apply to the Inmate Grievance Program supervisor for an extension of time to re-file his grievance based on mitigating circumstances; but that in no case would an extension be granted more than forty-five days after the alleged occurrence. *Id.* at ¶ 4 & Ex. A, Lt., dated Dec. 14, 2011. Plaintiff failed to provide an explanation of mitigating circumstances, either before or after the forty-five day period expired. *Id.* at ¶ 4.[4]

Additionally, Plaintiff never appealed any grievance related to the three incidents relevant to the instant Complaint, nor regarding a request for an extension of time to re-file his belated December 13 grievance, to the CORC. Bellamy Decl. at ¶¶ 1–3 & Ex. A.

### B. Failure to State a Claim

Defendants argue that Plaintiff failed to exhaust any of his surviving claims, and that he failed to state a retaliation claim against Defendant Damiano or an excessive force claim against Defendant Hayes regarding the pat-frisk incident. Defs.' Mem. of Law at pp. 11–15. Because we agree that Plaintiff's pat-frisk and retaliation claims are plainly meritless, we need not consider whether they were properly exhausted. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (citing 42 U.S.C. § 1997e(c)(2), for the proposition that "the PLRA exhaustion requirement is not jurisdictional, and thus . . . a district court [may] dismiss plainly meritless claims without first

---

[4] In his Complaint, Plaintiff alleges that his late grievance was returned to him, within the forty-five day period during which an extension could be granted, "stating that he should write to the I.G.P. (Inmate Grievance Program) Supervisor, but because the Plaintiff had no idea who he was, he just wrote back to the I.G.P. Representative C. Tapia asking him for the extension, which he never responded to." Compl. at p. 39.

addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies.").

## 1. Pat-Frisk Incident

According to Plaintiff, on October 16, 2011, Defendant Hayes "placed the Plaintiff in a frisk position . . . which there was no reason for. . . . [and] began to man handle him to the point that he was causing the Plaintiff undue and unnecessary pain." Compl. at pp. 33–34. At his Deposition, Plaintiff testified that "the point of the matter wasn't that he frisked me, it's the way he frisked me and knowing of my disability and the pain that my leg carries by touching. It's sensitive. It's like, you can't really touch it. I can't even touch it." Warren Dep. at p. 15. Plaintiff also admitted at his Deposition that no other individual would have felt pain from the amount of force used by Defendant Hayes during the frisk. *Id.* at p. 16.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components:

(1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29-30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including:

the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

Plaintiff's excessive force claim against Defendant Hayes is plainly meritless. To begin with, according to Plaintiff's own testimony, the amount of force used was clearly *de minimis*, *i.e.*, Plaintiff admitted that no other person would have considered the force Defendant used during the pat-frisk to be excessive, and that other than temporary discomfort, Plaintiff sustained no injury from the incident. Crucially, there is no evidence that Defendant Hayes had any intent to harm Plaintiff. Indeed, by Plaintiff's own admission "up until this point [he] didn't think of Defendant Officer Hayes [as] such a bad individual, since he had been the Officer who . . . had sent [another inmate] to help [him] with his package after becoming stuck in the yard." Compl. at p. 34. Moreover, although the alleged impetus for the pat-frisk, that Plaintiff was to meet with an investigator, related to a grievance he filed, the grievance had nothing to do with Defendant Hayes. *See id.* at pp. 20–21 & 33–34. Thus, nothing in the record would permit a reasonable juror to conclude that Defendant Hayes possessed the requisite subjective state of mind for purposes of an excessive force claim.

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's excessive force/pat-frisk claim against Defendant Hayes.

## 2. Retaliation Claim

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by

Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. To satisfy the second prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their

motive for the discipline. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)); *see also Gayle v. Gonyea*, 313 F.3d at 682 (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal

quotation marks and citations omitted)).

On September 12, 2011, Defendant Damiano issued a misbehavior report against Plaintiff, charging him with lying and being out of place; Plaintiff was subsequently convicted of being out of place at a Tier II disciplinary hearing. Damiano Decl. at ¶¶ 2–3 & Exs. A–B. Plaintiff maintains that the misbehavior report was fabricated by Defendant Damiano in retaliation for a grievance he filed against her and two other officers at Greene on August 6, 2011; and that as a result he was confined to his dorm at mid-state for thirteen days[5] without any privileges. Compl. at p. 31; Warren Dep. at pp. 39–52.

Plaintiff's August 6, 2011, grievance against Defendant Damiano and other officers at Greene, *see* Compl. at pp. 26–27 & 31,[6] was clearly a protected exercise, *Jones v. Coughlin,* 45 F.3d at 679-80. However, even if we assume, *arguendo*, that Defendant Damiano's disciplinary report constituted an adverse action, Plaintiff's retaliation claim would still fail because it is uncontested that Defendant Damiano also had a legitimate non-retaliatory reason for filing the misbehavior report on September 12, 2011; namely, that Plaintiff was "out of place." *See* Damiano Decl. at ¶ 2 & Ex. A. Thus, even if Defendant Damiano was partially motivated by retaliatory animus, the fact that she also had a legitimate non-retaliatory reason for writing the misbehavior report nullifies Plaintiff's claim. *See Graham v. Henderson*, 89 F.3d at 79.

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's retaliation claim against Defendant Damiano.

---

[5] Plaintiff testified at his Deposition that, as a result of his disciplinary conviction, in addition to losing all of his privileges, he was confined to his cube (keeplocked) for thirteen days. Warren Dep. at pp. 46–49.

[6] Nothing in Defendants' submissions controvert Plaintiff's claim that he filed a grievance against Defendant Damiano and others on August 6, 2011. *Cf.* Black Decl. at ¶ 3 (referring only to the grievances Plaintiff filed at Greene "after the date of September 11, 2011").

## C. Exhaustion

Defendants argue that Plaintiff's claim that he was assaulted by Defendants Hayes, Begley, Lampoutus, and John Doe(s) on November 6, 2011, should be dismissed because he failed to exhaust his administrative remedies before filing the instant action. Defs.' Mem. of Law at pp. 4–10.

Pursuant to the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense

or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord*, 520 F. Supp. 2d 487, 495–96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In New York State, the administrative remedies ordinarily consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[7] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the CORC makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Additionally, there is an expedited procedure for the review of grievances alleging harassment. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. Once it is determined that the grievance presents a "bona fide harassment issue" the Superintendent is required to initiate an in-house investigation, and within twenty-five (25) calender days of receipt of the grievance, the superintendent must render a decision. *Id.* at § 701.8(d) & (f). If the superintendent fails to respond within the required twenty-five (25) day time limit, the grievant may appeal directly to CORC by

---

[7] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk. *Id.* at §

701.8(g). CORC then has thirty (30) calender days from the time the appeal was received to render

a decision. *Id.* at § 701.5(d)(3).

It is uncontested that Plaintiff failed to file any grievances with regard to the November 6

assault while at Greene. Black Decl. at ¶ 2.[8] Furthermore, on December 13, 2011, Plaintiff

attempted to file a grievance regarding the November 6 issue at Mid-State. Tapia Decl. at ¶ 3 & Ex.

A. That grievance was denied as untimely, and Plaintiff was instructed that he could request an

extension of time to file the grievance, based on extenuating circumstances, but that in no event

would such an extension be granted more than forty-five days after the alleged event; nonetheless,

Plaintiff failed to provide extenuating circumstances within the proscribed forty-five day period (or

thereafter). *Id.* at ¶ 4 & Ex. A. Additionally, Plaintiff never appealed any grievance related to the

November 6, 2011 alleged use of excessive force or a request for an extension to re-file his belated

grievance to the CORC. Bellamy Decl. at ¶¶ 2–6 & Ex. A.

Accordingly, Defendants have established that no issues of material fact exist with regard

to whether Plaintiff exhausted his November 6 excessive force claim. However, such a conclusion

does not render our exhaustion inquiry complete. Notwithstanding his failure to respond to

---

[8] Plaintiff claims in his Deposition that he filed a grievance with regard to the November 6 incident on November 8, but never received a response. Warren Dep. at p. 61. However, he provides no evidence, beyond his vague and unsupported statements to support this proposition. Such a statement, standing on its own, is insufficient as a matter of law to raise a triable issue of fact in light of Defendants' properly supported Motion for Summary Judgment. *See Carey v. Crescenzi,* 923 F.2d at 21. Moreover, even if we accept this allegation as true, the fact that Plaintiff did not receive a response did not alleviate his duty to continue to pursue the administrative remedies that were available to him. Indeed, in the event that the IGRC or superintendent (in cases involving the expedited grievance procedure), do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC. *See Charles v. Gordon,* 2013 WL 6667632, at *4 (S.D.N.Y. Dec. 17, 2013) (citing *Williams v. City of New York,* 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005), for the proposition that "[c]ourts in this circuit require an inmate to pursue all levels of appeal even if the inmate does not receive a response to his initial grievance"); *Torres v. Carry,* 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009) (superintendent's failure to respond within twenty-five days did not alleviate prisoner's duty to file an appeal with the CORC in order to exhaust administrative remedies).

Defendants' Motion, given the special solicitude and liberality afforded to *pro se* plaintiffs in the Second Circuit, we must still look to the allegations of the Plaintiff's Complaint and his Deposition testimony to determine whether Plaintiff has met his burden of production with regard to the issues of availability, estoppel, and/or special circumstances.

### 1. Availability

The availability inquiry is a two part test, first courts must ask whether the prison had a grievance procedure in place that inmates could avail themselves of, and second, "whether threats rendered 'all administrative remedies unavailable' or 'some procedures that would ordinarily be available . . . effectively unavailable.'" *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (citing *Hemphill v. New York,* 380 F.3d at 686–87). "Unavailability of administrative remedies . . . is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." *Puga v. Choto*, 2014 WL 675824, at *4 (N.D.N.Y. Feb. 21, 2014) (quoting *Kasiem v. Switz,* 756 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2010)) (alterations in original). In the instant case it is clear, from the fact that Plaintiff availed himself of the grievance procedures at both Greene and Mid-State, that such procedures did in fact exist. Black Decl. at ¶ 3; Bellamy Decl. at ¶¶ 4–5 & Exs. A–C; Tapia Decl. at ¶ 3 & Ex. A.

In his Complaint, Plaintiff alleges that on multiple occasions grievances which he submitted at Greene were either discarded or never filed, that on or about September 14, 2011, Inmate Grievance Procedure ("IGP") Supervisor M. Meyers and IGP Officer Snide summoned him to their office, where he was told not to "submit anymore grievances or else he was gonna [sic] have problems the next time he came to the grievance office[,]" and that he was threatened and intimidated by Defendants and others while at Greene in retaliation for having filed grievances and

complaints about them and other officers. *See, e.g.,* Compl. at pp. 21–22, 27–28, 31–32, 35, & 38; *see also* Warren Dep. at pp. 52–53. It is certainly possible that such behavior rendered all or part of the grievance procedure unavailable to Plaintiff while he was at Greene. *See Hemphill v. New York*, 380 F.3d at 688 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance.") (citation omitted).

Crucially, however, these threats did not foreclose all of the administrative remedies available to Plaintiff. To begin with, although the threats and intimidation Plaintiff alleges he suffered at Greene may have caused the ordinary grievance procedures to be unavailable to him, such threats did not necessarily preclude him "from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* Plaintiff has failed to allege any facts from which a reasonable juror could conclude that Plaintiff was precluded from utilizing the expedited grievance procedure available to him for claims of employee harassment while at Greene.

Moreover, Plaintiff was transferred to Mid-State on November 25, 2011, with two days remaining in the twenty-one day limitations period to timely file a grievance regarding the November 6, 2011 incident. And, Plaintiff acknowledges that he filed several grievances after arriving at Mid-State. Compl. at pp. 31 & 34. The only explanation Plaintiff offers for his failure to timely file a grievance on November 25, 26, or 27 is that between approximately November 17, 2011 and November 26, 2011 he did not have adequate access to pen and paper with which to file grievances. Warren Dep. at pp. 54, 61–62, & 64. Yet, this claim is plainly belied by Plaintiff's own allegations that, while at Greene, he wrote letters on November 21 and 23, 2011, Compl. at pp. 38–39, and while at Mid-State on November 26, 2011, he wrote a four-page grievance which he

belatedly filed on December 13, 2011, Tapia Decl. at Ex. A, Greivance, dated Nov. 26, 2011; *see also* Warren Dep. at pp. 63–64 (Plaintiff acknowledges that after about a month he "finally g[o]t somewhere . . . stationary" and "the box [was] working pretty good at Midstate [sic] where [he] could get some paper and a pencil to resubmit that grievance."). Thus, it is also possible that Plaintiff could have filed a timely grievance when he first arrived at Mid-State. *See Rambert v. Mulkins*, 2014 WL 2440747, at *11 (S.D.N.Y. May 30, 2014) (concluding that grievance procedure was available to prisoner where "by his own admission, Plaintiff had the ability and opportunity to grieve the [alleged] incident within the relevant time period").

Finally, as noted above, after his belated December 13 grievance regarding the November 6 incident was rejected as untimely, Plaintiff was given explicit instructions on how to apply for an extension of time to re-file within the forty-five day limitations period for such requests; nonetheless, he failed to follow those instructions. Tapia Decl. at ¶ 4 & Ex. A, Lt., dated Dec. 14, 2011. Plaintiff admitted as much at his deposition. Warren Dep. at p. 64. Yet, Plaintiff failed to do so.[9] Thus, administrative remedies were available to Plaintiff well after his November 25 arrival. *See Lopez v. Goodman*, 2013 WL 3105550, at *3 (W.D.N.Y. June 18, 2013);[10] *Woodford v. Ngo*,

---

[9] Plaintiff's claim that he was unable to file such a request properly because he did not know who the IGP supervisor was, is dealt with *infra* at Part II.C.3.

[10] In *Lopez v. Goodman*, the court stated:
The grievance procedure is not unavailable to an inmate simply because he missed an initial deadline for filing a grievance. If an inmate misses the deadline for filing, the IGP contains provisions for requesting an extension of time to file in cases of mitigating circumstances. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a). Moreover, a denial of an extension of time to file a grievance is itself a grievable complaint that may be pursued via the IGP. 7 N.Y.C.R.R. § 701.6(g)(1)(ii). Plaintiff fails to assert in his Reply why he has apparently not attempted to avail himself of the IGP, or that he has attempted to file for an extension of time to file a grievance but has been denied. Therefore, Plaintiff has not exhausted all of his administrative remedies.
*Lopez v. Goodman*, 2013 WL 3105550, at *3; *compare with Mandell v. Goord*, 2009 WL 3123029, at *11 (N.D.N.Y. Sept. 29, 2009) (finding issue of fact with regard to exhaustion where "plaintiff's grievance provided an explanation for his delay, that grievance was tersely rejected as untimely, and the defendants did not advise the plaintiff at that time that
(continued...)

548 U.S. at 115 n.10 ("If a prison regulation explicitly grants prison officials discretion to consider untimely or otherwise procedurally defective grievances, of course prison grievance remedies would still be "available," and thus unexhausted, if a prisoner had not even tried to file a grievance simply because it was untimely or otherwise procedurally defective.") (J. Breyer, concurring); *cf. Tomony v. Cnty. of Suffolk*, 2013 WL 55821, at *4 (E.D.N.Y. Jan. 3, 2013) (quoting *Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir.1999), for the proposition that "'[s]ince appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.'").

### 2. Estoppel

The Second Circuit has stated that "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" can constitute cause to estop a defendant from raising the affirmative defense of exhaustion. *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011).

At the same time, "a defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies (for purposes of the second part of the three-part inquiry established by the Second Circuit) based on the actions or inactions of *other* individuals." *Smith v. Kelly*, 2013 WL 6154366, at *6 & n.17 (N.D.N.Y. Oct. 30,

---

[10](...continued)
he should request an exception to the time limit from the IGP supervisor based on mitigating circumstances, or that additional information regarding his delay in filing the grievance was needed. It was not until the letter of October 6, 2006 from the Commissioner's office, responding to the plaintiff's attempted appeal of the denial of his grievance as untimely, that the plaintiff was instructed to file for an exception under section 701.6(g); by that time, one hundred and seventeen days had passed since the alleged occurrence, and the time limit for seeking extensions—forty-five days from the alleged occurrence—had long since expired.").

2013) (emphasis in original) (collecting cases). Thus, to the extent that Plaintiff's Complaint can be interpreted as asserting that estoppel is warranted due to the alleged interference/destruction of his grievances by non-party Officers Snide and Myers, the difficulties he experienced while in SHU or the Box at Greene or Midstate, or the actions or threats of anyone other than Defendants Hayes, Lampoutus, Begley, or John Doe(s), such claims are unavailing.

Moreover, to the extent that any of the Defendants personally interfered with Plaintiff's ability to file grievances while he was at Greene, as noted above, *supra* Part II.C.2, Plaintiff had ample opportunity to avail himself of the grievance procedure while he was at Mid-State, away from the influence of Defendants. Accordingly, estoppel is not warranted in the instant case. *See Harvey v. Corr. Officers 1-6*, 2014 WL 2779252, at *10 (N.D.N.Y. Mar. 18, 2014) (no estoppel where "Plaintiff . . . was transferred to a different facility while he still had over two weeks to file a grievance. . . . [and] [t]here [wa]s no testimony in the record that suggests the Plaintiff's concerns about staff at Clinton became a concern at Downstate for any reason, nor that he would have had any difficulty in filing a timely grievance at Downstate due to any actions of the named Defendants."); *Goodson v. Silver,* 2012 WL 4449937, at *8 (N.D.N.Y. Sept. 25, 2012) (reaching a similar conclusion).

### 3. Special Circumstances

Plaintiffs allegations that he was unable to seek an extension because "[he] didn't know anything about the grievance process at that time," Warren Dep. at p. 53, or, "because [he] had no idea who [the supervisor] was," Compl. at p. 39, do not evince special circumstances. Plaintiff's tacit admission of ignorance is a far cry from the type of mistake that ordinarily constitutes special circumstances, such as where a prisoner attempting to navigate the grievance procedure reasonably

misinterprets a confusing or ambiguous procedural regulation. *See Harrison v. Goord*, 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (quoting *Giano v. Goord*, 380 f.3d at 678, for the proposition that "[t]he existence of such special circumstances 'must be determined by looking at circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way.'"). Moreover, we have reviewed Plaintiff's other arguments, and we can find no evidence that special circumstances warrant reprieving Plaintiff of the PLRA's exhaustion requirement.

Accordingly, having found no indication that the grievance process was unavailable, that Defendants should be estopped from asserting the defense of exhaustion, or that special circumstances warrant a reprieve from the PLRA's exhaustion requirement, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's November 6, 2011, excessive force claim.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 24), be **GRANTED**, and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:   July 28, 2014
        Albany, New York


Randolph F. Treece
U.S. Magistrate Judge